UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00670-M

THE CINCINNATI INSURANCE COMPANY,            PLAINTIFF

V.

OMEGA FLEX, INC.,            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Prior to *voir dire* in the *Cincinnati Insurance Company v. Omega Flex, Inc.* action, a prospective juror ("Juror #230"), while waiting in the jury assembly room, searched the internet for information concerning the parties in this product liability case. His Google search turned up a site discussing a recent Pennsylvania jury verdict against defendant Omega Flex in a similar action. He discussed this information with two other prospective jurors in the jury assembly room. Though his report of the case's outcome was accurate, he significantly misstated the jury verdict amount. In *Terrence Tincher v. Omega Flex Inc.*, No.08-00974, the jury returned a verdict in the amount of $1,028,231.90, but Juror #230 incorrectly believed that the verdict was approximately $10,000,000.00.

The court learned of this interaction during the preliminary stages of *voir dire*. When posed the question whether any jurors had familiarity with Omega Flex or its products, Juror #230 raised his hand and stated that he had searched the internet for information about Omega Flex. He said what he learned could "potentially" influence his ability to return a fair and impartial verdict. Juror #230 was asked to approach the bench along with counsel for both parties. He recounted his Google search and the ensuing conversation with others, and then

1

identified the two other prospective jurors he spoke with.  They too were asked to approach the bench.  After several minutes, the court called for a short recess and decided to excuse the three jurors.  Although the conversation among the Judge, attorneys and three jurors could not be heard by the potential jurors, it took place in the jury pool's presence.  Defendant Omega Flex then moved to dismiss the entire jury pool on the basis that Juror #230's statement and subsequent dismissal from the case tainted the jury pool so as to preclude Omega Flex from having a fair and impartial jury.

A federal district court judge exercises substantial control over the *voir dire* process.  The manner in which to conduct *voir dire* rests within the sound discretion of the trial court, and any related rulings should not be overturned absent a showing of an abuse of discretion.  Confronted with possible juror misconduct and juror taint, the "fact-specific and often delicate task of assessing such situations . . . counsels that a district court must enjoy broad discretion" in addressing such issues and that any subsequent decision should not be reversed "unless the judge's choice among the various avenues available was patently unreasonable." *Tavares v. Eddie Jones*, 705 F.3d 4, 14 (1st Cir. 2013)(internal quotation omitted).

The present situation involving a potential juror conducting and sharing inaccurate internet research is unusual and not one thoroughly analyzed by the courts.  The main objective of *voir dire* is to select a jury composed of individuals capable and qualified of rendering an impartial verdict.  Accordingly, *voir dire* serves as a filter to discern any bias, prejudice or partiality present in the jury pool.  The court has the responsibility to delicately balance competing considerations of fairness between the parties and respect judicial economy.  Given these considerations, the court makes the following observations:

It is very early in a two and a half week trial. The court has to balance the benefit of going ahead with possible taint in the jury panel, versus the benefit of starting afresh with some delay. There is a real risk that the jury pool is tainted and there may be some material impact as a result of the online research incident. Exercising caution, it appears the better course is to nullify the risk of taint now, before the jury is empaneled, rather than learning in hindsight of lingering bias. The cost of continuance is real, but more manageable.

The court must also discern potential areas of prejudice stemming from the Googling incident that could meaningfully impact the impartiality of the empaneled jury. Juror #230 shared information that is both prejudicial and materially inaccurate. The present situation is distinguishable from the *United States v. Tavares* case wherein the juror found out information that was not incorrect. *See Tavares*, 705 F.3d at 13. In that case, several members of the jury pool discussed the nicknames of the criminal defendants, as demarcated on the docket sheet posted outside of the courtroom. These jurors laughed and joked about the nicknames, and made comments surmising that the nicknames may indicate gang membership. The district court denied defendant's motion to disqualify all jurors who had been in the jury room during the suspect conversation. The court reasoned that the prejudice and taint from the jurors' speculation was minimal given that the "defendants' nicknames would indeed be before the yet-to-be-selected jury as evidence during trial." *Id.* at 14. Here, Juror #230 shared the outcome and jury verdict in a similar case involving Omega Flex. His statement as to a $10,000,000 result was off by a factor of 10. At this point, the admissibility of other accidents is uncertain, but jury verdicts will most likely be excluded.

Additionally, the court is uncertain how far the misinformation traveled. Though Juror #230 maintained that the conversation was confined to three jurors, the court cannot be assured

that somebody else did not overhear or witness it. The same cannot be said for the sidebar involving the Judge, attorneys and three jurors. The interaction took place in front of the jury pool and though the particulars of the conversation may not have been learned, the jury pool was well aware that Juror #230 was summoned to the bench after specifically researching information regarding Omega Flex. The jury pool could observe the entire interaction and notably, the significant concern expressed by defense counsel. The questioning of the jurors and their immediate dismissal suggests something is amiss. And more importantly, it suggests the problem is a defense problem. It casts a long shadow over the pool.

Remedial measures, though available, appear inadequate. The court could question the juror one-by-one if they had heard about the case in Pennsylvania or if they had heard the conversation between the implicated jurors. However, that act alone would just underscore the fact that there is some information online that is a matter of significant concern. It might place an irresistible temptation in front of other jurors to Google the party Omega Flex. It also presents a clear cut way for a juror to be excused from jury service that is anticipated to span two and a half weeks.

The court has an opportunity to avoid the risk that jurors could have been influenced by the facts presented. Though the jurors privy to the conversation could be excused, thus ostensibly vitiating the taint, the removal itself may well create a new taint in the juror pool, the extent of which remains uncertain. The court finds that the more prudent course of action is to grant Defendant's motion to dismiss the entire jury pool.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant, Omega Flex, Inc.'s motion to dismiss the entire jury pool is GRANTED. A new trial date will be set by separate order.

5

This 10th day of April, 2013.

cc:     Counsel of Record